PEOPLE ex rel. WAUFUL v. REEL et al., State Commissioners of Highways.

(Supreme Court, Appellate Division, Third Department. May 7, 1913.)

1. HIGHWAYS (§ 44*)—STATE ROUTES—SELECTION—SKENE MAP.

The Highway Law (Consol. Laws 1909, c. 25) adopted a new plan of highway construction, and while it continued a system of construction of county highways, it introduced a new system of state routes, to be constructed and paid for wholly by the state. It repealed Laws 1907, c. 715, which approved the "Skene map," on which highways in Oneida and other counties were designated, but by section 355 provided that the county highways to be selected by the commission for construction or improvement should be the highways in the respective counties designated on the "Skene map," except those on the map which had been designated and described as state highways by section 120, which declared that the "Skene map" should remain in full force and effect, notwithstanding the repeal of Laws 1907, c. 715, except that the boards of supervisors might transfer the mileage of any highways which were described as state routes to other highways within the particular town. Held, that the intention of section 355 was to restrict the applicability of the map to such highways shown thereon as were laid on routes not designated and described as state highways, and that the map had no effect on the location of such state highways.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 27, 137–140; Dec. Dig. § 44.*]

2. HIGHWAYS (§ 44*)—STATE ROUTES—LOCATION—HIGHWAY COMMISSIONERS —DESIGNATION OF ROUTE.

Highway Law (Consol. Laws 1909, c. 25) § 120, designated certain state routes, among which is route 25, described as "commencing at Whitesboro, near Utica, on route No. 28 in Oneida county, running thence northerly" by way of Marcy and certain other designated towns to a point to be determined by the commissioners "at or near the dividing lines between Herkimer, Lewis, and Oneida counties, running thence northeasterly," etc. Held that, the Legislature, in laying out such route, not having designated any specified highways over which such portion of the route should pass, the state commission was not bound to locate the direct route between certain towns as the particular highway along which the state route should pass, but had a reasonable discretion as to its location in such county, and in making an indirect route to go through another village of considerable importance did not abuse its discretion, though the route so selected would be 1.9 miles longer and increase the expenditure $25,000.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 27, 137–140; Dec. Dig. § 44.*]

Appeal from Special Term, Albany County.

Mandamus by the People, on the relation of Lester G. Wauful, against C. Gordon Reel and others, constituting the Commissioners

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of Highways of the State of New York. From a final order dismissing an alternative writ of mandamus, relator appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Hun & Parker, of Albany, for appellant.

Thomas Carmody, Atty. Gen., for respondents.

LYON, J. The material facts are undisputed. Prior to the passage of chapter 715, Laws of 1907, certain highways in the county of Oneida had been designated for improvement as public highways pursuant to the provisions of chapter 115 of the Laws of 1898, and embraced in such designation was a highway extending from Whitesboro northerly to the Herkimer county line, which passed along the direct route from Trenton to Remsen. In 1909 the Legislature enacted the Highway Law (Consol. Laws, c. 25), in section 120 of which it designated certain state routes, among which was route No. 25, therein described as—

"commencing at Whitesboro, near Utica, on route No. 28 in Oneida county, running thence northerly, by the way of Marcy, Holland Patent, Remsen, Alder Creek and White Lake Corners, to a point to be determined by the commission at or near the dividing lines between Herkimer, Lewis, and Oneida counties, running thence northeasterly by the way of Fulton Chain, * * * easterly by way of Raquette Lake, * * * northeasterly to Blue Mountain Lake, * * * northerly to Long Lake, * * * easterly to a point to be determined by the commission, on the dividing line between Essex and Hamilton counties, * * * easterly to Newcomb, * * * southeasterly, by the way of Minerva, to a point to be determined by the commission, on the dividing line between Warren and Essex counties, * * * thence by the way of North creek * * * to Lake George, * * * thence southerly to a point to be determined by the commission on the dividing line between Saratoga and Warren counties at or near Glens Falls, * * * thence southerly by the way of Saratoga Springs to Ballston Spa, * * * thence southeasterly to a point to be determined by the commission on the dividing line between Albany and Saratoga counties, * * * thence southerly to a point to be determined by the commission at or near the city of Albany."

The map of the highways in the various counties of the state so designated for improvement by chapter 715, Laws of 1907, was known as the "Skene map," and on it the highway before mentioned as having been designated pursuant to the Laws of 1898 and the amendments thereto was laid down as running over the direct route from Trenton to Remsen.

In April, 1911, the board of supervisors of Oneida county, pursuant to the provisions of section 355 of the Highway Law, modified the designation of county highways as laid down on the Skene map, which modification was approved by the highway commission in May, 1911, by eliminating certain mileage within that county, embraced within which was the description of route 25, stated as being about 40 miles, substituting in place thereof other mileage, included in which was the following:

"Beginning at the incorporated village of Trenton and running to the incorporated village of Prospect, on the road known as the Prospect-Trenton road, having a total length of about three miles, all in the town of Trenton."

In July, 1911, the respondents approved a resolution of the board of supervisors of Oneida county, adopted in December, 1909, requesting the improvement of said Prospect-Trenton road. In March, 1912, never having fixed the location of any part of state route 25, the respondents passed the following resolution:

"Resolved, that the portion of route No. 25 between Trenton and Remsen, Oneida county, be located as follows: Northeasterly from the hamlet of Trenton over proposed county highway, petition No. 2995, to Prospect, thence northerly and northwesterly through Remsen."

This route is 1.9 miles longer than the direct route between Trenton and Remsen, and will cost to construct approximately $25,000 more than a highway on the direct route. Soon thereafter this proceeding by mandamus was brought to compel the respondents to rescind said resolution of March 8, 1912, and to relocate the state highway on the direct route between Trenton and Remsen so designated on the Skene map.

The contention of the relator is twofold: That the location of state route 25 is controlled by the Skene map; and, even if not, that the respondents had no discretion in locating the route, but were legally bound to locate it along the direct highway from Trenton to Remsen, in accordance with the route shown on the Skene map. In both these contentions I think the relator is in error.

[1] The Highway Law of 1909 adopted a new plan of highway construction. While it continued a system of construction of county highways, it introduced an entirely new system of state routes, to be constructed and paid for wholly by the state. It repealed chapter 715, Laws of 1907, which approved the Skene map; but by section 355, entitled "County Highway Maps Preserved," provided that the county highways to be selected by the commission for construction or improvement should be the highways in the respective counties designated upon the Skene map, "except the highways on such map which have been designated and described as state highways by section 120 of this chapter." Said section also provided that "such map shall remain in full force and effect, notwithstanding the repeal of such chapter 715 of the Laws of 1907 by this chapter," except that the board of supervisors might transfer the mileage of any highways which were described as state routes to other highways within the town. Plainly the intention of section 355 was to restrict the applicability of the Skene map solely to such highways shown thereon as were laid upon routes not designated and described as state highways, and the Skene map cannot be held to have any effect whatever upon the location of state highways.

[2] As to the further contention of relator that the respondents had no discretion in locating the state route between Trenton and Remsen, but were required under the law to locate it along the direct highway between those villages, doubtless this would be true, had section 120, in describing route 25, specified the direct route as the particular highway along which the state route should pass, or had that section otherwise fixed that as the necessary location of the state route. However, the failure to designate any specified high-

ways over which this portion of the state route should pass, as had been specifically done as to many of the routes described in section 120, and the general description of route 25 indicated, in the absence of language from which a contrary intent might be implied, an intention upon the part of the Legislature to vest a reasonable discretion in the state commission of highways as to its location in that county.

Apparently route 25, running by way of Fulton Chain, Raquette Lake, Lake George, Blue Mountain Lake, Long Lake, and other popular resorts in the Adirondacks was designed as a tourist route readily reached from all parts of the state by the various connecting state routes, and the apparent design was to leave to the discretion and good judgment of the commission the locating of the route as would best serve such purposes, designating simply points which should be touched by the route, not even mentioning Trenton, but leaving it discretionary with the commission to reach Remsen from Holland Patent by way of Prospect, with a connection leading to Trenton Falls. Doubtless the change of the description of route 26 by chapter 573, Laws of 1910, providing that such route should pass by way of Trenton Falls to join route 25 at or near Trenton, required that route 25 should pass through or near Trenton. However, the relator claims that the Legislature, in its location in 1909 by section 120 of the Highway Law of route 26, indicated its intention that route 25 should not pass over highways from Trenton to Prospect and thence to Remsen, but should pass direct from Trenton to Remsen. The section at that time certainly indicated the intent of the Legislature that Prospect should be located upon a state route. It provided that route 26 should commence at Little Falls and run to Fairfield, "thence northwesterly to a point to be determined by the commission at or near Prospect on the dividing line between Oneida and Herkimer counties, running thence northwesterly to a point to be determined by the commission connecting with route No. 25." Concededly such dividing line between the counties was on the east bank of Canada creek.

The relator argues that it is not reasonable to suppose that the Legislature would have provided that the route should run from the county line northwesterly, connecting with route 25, had the Legislature intended that route 25 should run to Prospect. The exact location of Prospect, and whether the village limits extended to the west bank of the creek, was not shown upon the trial. With equal force it might be argued that if the Legislature intended that route 26 should connect with route 25 at Remsen, or above or below it, the statute would have so provided, and, by being silent as to where the connection should be made, the Legislature intended to leave that matter, as well as the location of route 25 before and after passing through Remsen, to the discretion of the commission. However, it does appear from the map of routes adopted by the commission and put in evidence that route 25 passes along the main northerly and southerly highway in Prospect, which is shown by the scale upon the map to be approximately 1,500 feet from the dividing line between Oneida and Herkimer counties, making the provision of the statute that route 26 should

run from the county line northwesterly to connect with route 25 entirely reasonable and applicable. `

As bearing upon the intention of the Legislature both that the Skene map should not in any way control the location of state routes, as that the state highway commission should have the right to exercise' reasonable discretion in locating such routes, the report of the joint committee of the Senate and Assembly appointed in 1907 to investigate and report to the next Legislature a revised Highway Law, and upon whose recommendation chapter 330 of the Laws of 1908 was adopted, which the following year was re-enacted as the Highway Law (Consol. Laws, c. 25), is entitled to serious consideration. This committee in its report to the Legislature said:

"In the selection of the respective routes, your committee has been governed by the general plan outlined on the map adopted last year; but we have been careful so to phrase the description in the proposed statute that, while it shall express the legislative judgment as to what routes are of sufficient importance for through connection to be entitled to be denominated as state roads and to be built and maintained by the state, a reasonable latitude is left to the discretion of the department so long as the result of connecting the cities of the state and building main routes is accomplished by the specific route selected by the department. To illustrate: One main route runs from Albany through to Buffalo, and yet there is no attempt to fix by statute the question of which side of the Mohawk river should be followed when the commissioners designate and lay out the specific roads which are to be improved, and this leads to the discussion of an important recommendation. We believe that, if the Legislature is to approve of the building of certain through routes,·the selection which was made by the several boards of supervisors and recommended by them to the state engineer last year and approved by the Legislature is valueless, because that selection was made under different circumstances and conditions, and, when considered in connection with the state highways, would undoubtedly lead to a material modification by the supervisors and other local authorities."

It does not appear that in locating route 25 through the village of Prospect the commission exercised an unreasonable discretion. The board of supervisors of Oneida county considered Prospect a place of sufficient importance to warrant the connecting of Trenton and Prospect by an improved county highway, the construction of which the board certified that public interest demanded. That the route via Prospect is 1.9 miles longer and will cost approximately $25,000 more to construct than the direct route from Trenton to Remsen is not conclusive against the location made by the commission, as its construction will avoid the necessity of constructing the located county road from Trenton to Prospect, and doubtless the construction or improvement of the highway from Prospect to Remsen. .Under the location made by the commission the three villages of Trenton, Prospect, and Remsen are placed upon the state route, while adopting the direct route would have accommodated but two.

It was conceded upon the trial that neither route is superior to the other as to grades or railroad crossings. No claim is made that the commission, in locating route 25 through Prospect, has not acted in good faith, believing the present location to be for the public interests; nor is there any claim made that such location is ·not in fact for the public interest, nor that the commission has abused reasonable discretion in locating the route by way of Prospect. The interest of

the relator in the location of route 25 does not appear; but the burden of showing that the commission had not the authority to locate the route by the way of Prospect, and, if the commission had such right, that its exercise thereof was the abuse of reasonable discretion, was upon the relator.

In this he has failed, and the decision of the trial court, dismissing the alternative writ of mandamus upon the merits, should be affirmed. All concur.