Harry K. AHOYIAN et al., Plaintiffs,

v.

MASSACHUSETTS TURNPIKE AUTHORITY, Perini Corporation, and First National Bank of Boston, Trustee, Defendants.

Civ. A. No. 62–332–F.

United States District Court
D. Massachusetts.

June 4, 1962.

J. Fleet Cowden, Sudbury, Mass., for plaintiff.

Edward O. Proctor and Ely, Bartlett, Brown & Proctor, Boston, Mass., Arthur E. Sutherland, Cambridge, Mass., for Massachusetts Turnpike Authority.

Before ALDRICH, Circuit Judge, and FORD and CAFFREY, District Judges.

ALDRICH, Circuit Judge.

This motion to dismiss an action brought to declare Chapter 354 of Massachusetts Acts of 1952, as amended, hereinafter the Act, to be in violation of the Fifth and Fourteenth Amendments of the United States Constitution does not require extensive discussion. Plain-

tiffs do not favor us with a reference to the particular statute under which they assert our jurisdiction. All parties, with the exception of a corporation having its principal place of business there, are citizens of Massachusetts. There are 18 named plaintiffs, but the complaint is framed in the nature of a class suit for these plaintiffs and others similarly situated who counsel said in oral argument "are with us in spirit." Defendants claim that 28 U.S.C.A. § 1343(3) which, unlike section 1331(a), requires no jurisdictional amount, is inapposite; that this is not an appropriate class action,[1] and that alleging the jurisdictional amount in the plaintiffs as a whole, as it is presently laid, is insufficient. Counsel stated in argument, however, that a number of plaintiffs, if permitted to amend, could each assert this amount. In view of our disposition herein we need not further pursue this matter.

The named plaintiffs are residents of Boston whose land and buildings either have been, or allegedly are about to be, taken by eminent domain as part of the right of way for the Massachusetts Turnpike Boston Extension to be constructed by the Massachusetts Turnpike Authority. The defendants are the Authority, a body corporate created by the Act, Perini Corporation, a general contractor, and The First National Bank of Boston, trustee for bondholders who have already loaned the Authority $180,000,000. Many of the provisions of the Act are set forth and fully considered in the light of Article 10 of the Massachusetts Declaration of Rights, as amended, by the Massachusetts court in Opinion of the Justices, 1953, 330 Mass. 713, 113 N.E.2d 452. We are directed to no pertinent differences between the two constitutions.[2]

Plaintiffs contend that the provisions of the Act are a "denial of due process, not taken individually, but taken collectively." We have viewed all matters embraced in this rather unusual position, but will refer only to two. Plaintiffs point to the fact that the Massachusetts State Highways Act, Mass.G.L. c. 81, permits public hearings on the laying out of ordinary highways, where as the present Act provides none. Apart from equal protection, viz., that this is an unlawful discrimination, plaintiffs do not claim a constitutional right to a public hearing. We see adequate distinguishing circumstances. The general statute, which grants the commission authority to lay out highways, gives no directions of any kind as to any particular one, whereas the present Act, of course, does. There is a difference between a road to be determined by a commission and one designated by the legislature. We do not see any unlawful delegation in permitting the Authority to make the final ministerial selection of the exact path. Cf. Dreyer v. Illinois, 1902, 187 U.S. 71, 23 S.Ct. 28, 47 L.Ed. 79; Opinion of the Justices, supra. Nor are plaintiffs without certain rights of review. Luke v. Massachusetts Turnpike Authority, 1958, 337 Mass. 304, 149 N.E.2d 225.

The only question of possible importance relates to procedures for payment. The Act expressly provides that there shall be no liability in the Commonwealth, but only in the Authority. Section 5(k) of the Act empowers the Authority to acquire land "by the exercise of the power of eminent domain in accordance with the provisions of chapter

---

1. Defendants' case of Coffman v. City of Wichita, D.C.D.Kan., 1958, 165 F.Supp. 765, aff'd 10 Cir., 261 F.2d 112, however, seems readily distinguishable.

2. Plaintiffs do say that the Massachusetts case is not authoritative here because the court was passing only upon procedures for taking land in "Westborough, Stockbridge, Northborough, etc." and not in the "highly urbanized areas of Newton and Boston." We are somewhat surprised by this argument, particularly in view of plaintiffs' insistence elsewhere, in discussing equal protection, that no ground exists to distinguish procedures for ordinary highway takings and those for a "full-blown * * * turnpike" (which they gratuitously add will have "an unobstructed view of the Prudential Tower."). We think plaintiffs' argument is a fallacy.

seventy-nine of the General Laws * * * provided, further, that the Authority shall give security to the state treasurer, in such amount and in such form as may be determined by the state department of public works, for the payment of such damages as may be awarded in accordance with law for such taking, and that the provisions of section forty of said chapter seventy-nine, in so far as the same may be applicable, shall govern the rights of the Authority and of any person whose property shall be so taken;"

Chapter 79, § 40, provides as follows:

"*Taking by private corporations; security for damages.* Before a taking is made or injury inflicted by a private corporation for which damages may be recovered under this chapter, such corporation shall give to the board of officers by whom such damages are to be awarded security to their satisfaction for the payment of all damages and costs which may be awarded by them or by the court for the land or other property taken or injured; and if, upon petition of the owner and notice to the adverse party, any security taken appears to them to have become insufficient, they shall require the corporation to give further security to their satisfaction. If the corporation fails to comply with this section any person entitled to such damages may treat the taking of his property or the proceedings by which the right to inflict injury thereon was acquired as void and any interference by such corporation with the use and enjoyment of his property as unlawful."

■ There is nothing in plaintiffs' argument that since the Authority is a public rather than a private corporation section 40 is not applicable to it. This would mean that the entire reference to that section in the Act is meaningless, a position impossible to take seriously. A more difficult question concerns the meaning of this section. Does the phrase "petition * * * [to] require the corporation to give further security" mean security sufficient for plaintiffs' personal payments, security sufficient for the "class" of plaintiffs represented in this action, whoever they may be, or security sufficient for all takings made and to be made under the Act? Obviously it would do the plaintiffs no good to have security sufficient simply for their own personal purpose unless it were earmarked, for which we find no provision in the statute. On the other hand, on the allegations of the complaint we foresee difficulty in making any reasonable determination of what would be sufficient security for any larger group, limited or unlimited. We asked defendants' counsel during argument for an interpretation of section 40 in this respect, but he did not adequately answer. Instead, defendants point to the fact that $180,000,000 is in the hands of the Authority available to pay condemnation claims and the fact that plaintiffs allege no such total requirement under any circumstances for condemnation payments. The difficulty with this argument is that the Act authorizes the expenditure of this money for any and all costs of construction, and there is no guarantee that, absent a sufficient security deposit, it might not be wholly consumed before payments to plaintiffs were finally made.[3] Defendants' case of Cherokee Nation v. Southern Kansas Ry. Co., 1890, 135 U.S. 641, 10 S.Ct. 965, 34 L.Ed. 295, involved an adequate deposit. Cf. Connecticut River R. R. v. Franklin County Commissioners, 1879, 127 Mass. 50.

■ This question, however, is premature. Before plaintiffs can raise any constitutional issues it is axiomatic that they must exhaust their administrative remedies. Myers v. Bethlehem Shipbuilding Corp., 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638. Plaintiffs' first move should have been to seek the relief offered by section 40 itself. McCarthy v. Woburn Housing Authority, 1960, 341 Mass. 539, 170 N.E.2d 700. If there-

---

**3.** Defendants point to the power of the Authority to issue additional bonds. It may be questionable how much weight we can attach to this since there is no obligation upon anyone to purchase them.

after constitutional infirmities appear in this regard—whether "thereafter" includes seeking relief in the state courts we do not intimate—it will be time enough to consider them.

The complaint is dismissed.