Van Voorhis, J.
 

 This action involves a dispute between local property owners concerning the location of a portion of the route to be traversed by the construction of a new State highway Avhich will form part of Route 117. The map in evidence shows that, regardless of Avho wins this lawsuit, the new highway will pass through the area described as “Family Estate” at Pocantico Hills, near Tarrytown, the litigated portion of the route affecting residents farther north. The Legislature designated the course to be followed by this thoroughfare as running generally in a southwesterly direction from Route 9-A to Route 9 following mainly the course of the existing roadbed of old Sleepy Hollow Road. The highway is directed to follow this course by particular description set forth in the amendment to section 341 (subd. 57, par, 1, cl. k) of the Highway Law, which was enacted by chapter 290 of the Laws of 1965. It is the function of the Legislature to authorize the location, construction and improvement of State highways, which is done in article XII of the Highway Law in which section 341 is contained. The same article assigns to the State Superintendent of Public Works the power and duty of constructing, improving and maintaining State highways as authorized by the Legislature. In this instance, the State Superintendent is taking proceedings for the construction of 3.5 miles of this highway over Avhat appears to be a different route from that authorized by the 1965 statute above mentioned. Plaintiffs oavu real property where the Superintendent proposes to put the highway by deviating from the course prescribed by statute. This action is brought to restrain him from departing from the route established by the Legislature.
 

 The basis on which the Superintendent claims this authority is subdivision 2 of section 11 of the Highway Law which provides, in pertinent part, as folloAvs: “ He may provide for a deviation from the line of a highway already existing, if thereby a shorter or more direct highway, or a lessened gradient may be obtained Avithout decreasing the usefulness of the highway.”
 

 No reason is assigned by the Superintendent for making this deviation except to say that he has taken into consideration the factors which are statutorily provided ‘ and, on the basis of
 
 *195
 
 such consideration, yonr deponent, in his discretion, has determined to deviate from the so-called ‘ statutory ’ alignment and to adopt the so-called ‘ northerly ’ alignment.” His theory seems to be that subdivision 2 of section 11 gives him power to override the Legislature in this respect and that it will be presumed that the altered route will be shorter, more direct or with a lessened gradient, notwithstanding that the statutory route was originally recommended by the Public Works Department. Certainly the burden is on him to show that some engineering reason exists for departing from the express direction of the Legislature. It has long been public knowledge that the location of this extension to Route 117, as in the case of most other highways, has been a source of heated controversy among local residents who would prefer it to go where their neighbors are rather than where they live themselves. It is a difficult and thankless task to choose between them, and no bad faith has been shown on the part of anybody connected with the project. It is not an engineering function, however, pertaining to the State Superintendent, to decide between the grievances of those who want the statutory route and the others who want the State Superintendent’s route. The decision between these contending property owners has to be made somewhere and it is appropriate for the Legislature to do so. Not only is this appropriate but the Legislature unquestionably has the power to select the route and, after it has acted, the State Superintendent lacks power to change it except in limited instances for engineering reasons.
 

 This does not mean that the State Superintendent lacks all power to determine the locations of portions of State routes, or that it is not his function to do so in instances where the course of the route authorized by the Legislature is outlined in such general terms as to afford some latitude to the Superintendent in executing the Legislature’s command to build the highway. This is true even without subdivision 2 of section 11 of the Highway Law, which has been construed to apply only to existing highways and not to relate to the laying out of new highways (1907 Opns. Atty. Gen. 327, 332-333). It may well be, also, that where there are compelling engineering reasons, the State Superintendent may make minor deviations from a course of a highway as directed by the Legislature. Here, however, the Superintendent
 
 *196
 
 has given no reasons at all. Such a reason was given in
 
 Matter of Brown
 
 v.
 
 McMorran
 
 (23 A D 2d 661) by pointing out that section 85 of the Highway Luav directs him to do all acts necessary to comply with the Federal Aid Highway Acts (U. S. Code, tit. 23, § 101
 
 et seq.)
 
 and that the funds allotted to the State by the Federal Government for construction of roads in the interstate system were not available unless he made the deviation to accord with the course of the highway as determined by the Federal Highway Administrator. There his statutory authorization was held by the Appellate Division to be section 85 of the Highway Law. Nothing of that sort is presented here.
 

 Showers
 
 v.
 
 Stimson
 
 (Special Term opinion, unreported) which was affirmed without opinion (272 App. Div. 1037) concerns a more restricted exercise of discretion by the State Superintendent in the location of a bridge at the entrance of Route 17 into the City of Corning. The Special Term Justice (who was the Avriter of this opinion) observed that “ The legislature cannot be expected to define the exact course of all state highways throughout their length and breadth. Some discretion is necessarily left to the public officers charged with carrying these laws into effect”, citing
 
 Matter of Buel
 
 (168 N. Y. 423) and Highway Law (§ 11, subd. 2) which was there applicable in that there was a change in an existing highway making a shorter route over less than a mile in length. The brief of the State on appeal to the Appellate Division, by the present Solicitor General, said (p. 22) that “ The very failure to designate a ‘ specified ’ location and the ‘ general description ’ of the route indicates ‘ an intention upon the part of the Legislature to vest a reasonable discretion ’ in the Superintendent of Public Works ‘ as to its location ’
 
 (cf. People ex rel. Wauful
 
 v.
 
 Reel,
 
 157 App. Div. 128, 132).”
 

 In the
 
 Wauful
 
 case the Third Department stated at page 132: “As to the further contention of relator that the respondents had no discretion in locating the State route between Trenton and Remsen, but were required under the law to locate it along the direct highway between those villages, doubtless this would be true had section 120 [of the Highway Law] in describing route 25 specified the direct route as the particular highway along which the State route should pass, or had that section otherwise fixed that as the necessary location of
 
 *197
 
 the State route. However, the failure to designate any specified highways over which this portion of the State route should pass, as had been specifically done as to many of the routes described in section 120, and the general description of route 25 indicated in the absence of language from which a contrary intent might be implied an intention upon the part of the Legislature to vest a reasonable discretion in the State Commission of Highways as to its location in that county.”
 

 The Legislature did by enacting chapter 290 of the Laws of 1965 specify in the Highway Law (§ 341, subd. 57, par. 1, cl. k) what it omitted to specify in the
 
 Wauful
 
 case, which the Appellate Division indicated would have changed the result.
 

 The State Superintendent is charged, as previously stated, with the responsibility of constructing and maintaining State highways and this entails discretion in determining the precise location of bridges, routes, embankments and other highway improvements where the Legislature has provided for State or interstate routes in general terms. In instances where the Legislature has prescribed the exact route, the discretion of the Superintendent in this respect is more limited.
 

 It is not so clear, we think, as to be decided by summary judgment that this deviation from the statutory line of the extension of Route 117 is merely a minor one, required by engineering reasons. In this connection, it may be noted that section 30 (subd. 1, par. [b]) of the Highway Law provides that, whenever plans for the construction of a State highway designated in section 340 or section 341 of the Highway Law shall provide for relocation “which deviates from the location of the existing highway for a continuous length in excess of one mile as measured along the center line of the existing highway, the superintendent of public works shall, before filing the descriptions and the original tracings of any maps or proceeding with the acquisition of property or the work of construction, reconstruction or improvement, transmit such plans to the board of supervisors of each county in which such relocation or any portion thereof is situated.” The Board of Supervisors, it is provided, may approve or disapprove. This deviation, it will be recalled, is three and one-half miles long. It is respondents’ position on this appeal that the words “ a highway already existing ”, as used in subdivision 2 of section 11 of the Highway Law, mean
 
 *198
 
 already in use or merely legally authorized. Even if the language were construed to include the latter, it would still have to come before the Board of Supervisors and defendants have been awarded summary judgment dismissing the complaint on a record which does not indicate whether or not it has been presented to the Board of Supervisors of Westchester County. The circumstance that approval by the board is called for if the deviation exceeds one mile in length bears upon whether this is to be construed as a “ minor ” deviation as matter of law. That cannot be decided, we think, on a motion for summary judgment.
 

 The order appealed from should be reversed, with costs in this court and in the Appellate Division, and the motions to dismiss the complaint denied.
 

 Chief Judge Fuld and Judges Burke, Scileppi, Keating and Breitel concur with Judge Van Voorhis; Judge Bergan dissents and votes to affirm on the ground that the action of the Superintendent of Public Works was reasonably within the frame of his statutory authority.
 

 Order reversed and matter remitted to Special Term for further proceedings in accordance with the opinion herein, with costs in this court and in the Appellate Division.