CITIZENS COMMITTEE FOR the HUDSON VALLEY, The Sierra Club and the Village of Tarrytown, New York, Plaintiffs-Appellees,

v.

John VOLPE, Individually and as Secretary of Transportation of the United States, Walter J. Hickel, Individually and as Secretary of the Interior of the United States, Stanley S. Resor, Individually and as Secretary of the Army of the United States, and William F. Cassidy, Individually and as Chief of Engineers, Corps of Engineers of the U. S. Army, Defendants-Appellants,

J. Burch McMorran, Individually and as Commissioner of the Department of Transportation of the State of New York, Intervenor-Appellant.

CITIZENS COMMITTEE FOR the HUDSON VALLEY, The Sierra Club and the Village of Tarrytown, New York, Plaintiffs-Appellants,

v.

J. Burch McMORRAN, Individually and as Commissioner of the Department of Transportation of the State of New York, Defendant-Appellee.

Nos. 428–43, Dockets 34010, 34057, 34058, 34081, 34099, 34100.

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1969.

Decided April 16, 1970.

David Sive, New York City (Alfred S. Forsyth, Sigmund Anderman and David Perlmutter, Winer, Neuburger & Sive, New York City, of counsel), for plaintiffs-appellees-appellants Citizens Committee, Sierra Club and Village of Tarrytown.

Robert S. Lynch, Atty., Department of Justice, Washington, D. C. (Shiro Kashiwa, Asst. Atty. Gen., and Edmund B. Clark, Atty., Department of Justice, Washington, D. C., Robert M. Morgenthau, U. S. Atty. for Southern District of New York, New York City, and Peter R. DeFilippi, Asst. U. S. Atty., New York City, of counsel), for appellants Volpe et al.

Joel H. Sachs, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., of the State of New York, Albany, N. Y., and Mark T. Walsh, Asst. Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for intervenor-appellant-appellee-McMorran.

The Wilderness Society, represented by Marshall, Bratter, Greene, Allison & Tucker, New York City, James Marshall and Henry Winestine, New York City, of counsel, amicus curiae.

The National Parks Association, represented by David E. Birenbaum, Washington, D. C., Strasser, Spiegelberg, Fried, Frank & Kampelman, Washington, D. C., of counsel, amici curiae.

Before MOORE and KAUFMAN, Circuit Judges, and RYAN,* District Judge.

MOORE, Circuit Judge:

The present appeal is a consolidation, ordered by this Court on October 27, 1969, of several separate appeals taken from a final order and judgment entered by the district court on July 25, 1969. Trial and judgment below in turn followed a consolidation of four separate actions brought by the various plaintiffs against the various defendants here on appeal. The opinion of the district court, setting out the facts, the various claims and Judge Murphy's conclusions of law, is reported at 302 F.Supp. 1083 (S.D.N.Y.1969).

These actions arose out of a proposal by the New York State Department of Transportation for construction of the Hudson River Expressway. The plaintiffs object to the proposed construction of a six-lane arterial highway, designed for both commercial and passenger traffic, along a ten-mile stretch of the Hudson River's eastern bank between Tarry-

---

* Of the Southern District of New York, sitting by designation.

town and Crotonville. Before construction of the Expressway can begin, the New York Department of Transportation must secure the approval of certain federal agencies, because the planned construction requires dredging and filling in a portion of the Hudson River along the shoreline, and the Hudson is a navigable waterway under federal jurisdiction. The New York Department of Transportation proposes placing some 9,500,000 cubic yards of fill, bound by a rock wall, along a portion of the river's bank. The landfill would extend, at its widest point, approximately 1,300 feet (nearly a quarter of a mile) into the Hudson.

Upon application of the State of New York, the United States Army Corps of Engineers (the Corps) issued a permit authorizing the dredge and fill operation pursuant to its authority under the Rivers and Harbors Act of 1899, 33 U.S.C. § 401 et seq. Arguing that the proposed construction involved both a "dike" and a "causeway" within the meaning of § 401, the plaintiffs sought (1) a declaration that the permit as issued was be-

yond the scope of the Army's authority, and (2) injunctive relief to prohibit the issuance of any permit or the commencement of any construction in the absence of congressional consent and approval of the Secretary of Transportation.[1] The district court agreed, finding that a 4½ mile rock wall jutting into the river constituted a "dike" and that the Expressway project would require construction of a "causeway" before its completion. The district court held that the Corps had breached a nondiscretionary duty to secure the consent of Congress and the approval of the Secretary of Transportation before issuing the permit. The permit was declared void, and the court granted the injunctive relief sought against the federal defendants and against J. Burch McMorran, the New York Commissioner of Transportation. All defendants appeal from this order.

The plaintiffs also appeal from a portion of the district court's order which dismissed their claims against McMorran as a primary defendant. These claims challenged the constitutionality of the Expressway Law,[2] which authorized

---

1. Rivers and Harbors Act of 1899, section 9, 33 U.S.C. § 401, provides in pertinent part:

 It shall not be lawful to construct or commence the construction of any bridge, dam, dike, or causeway over or in any * * * navigable river * * * of the United States until the consent of Congress to the building of such structures shall have been obtained and until the plans for the same shall have been submitted to and approved by the Chief of Engineers and by the Secretary of the Army * * *.

 The defendants contend that construction of the landfill as proposed was referable only to section 10 of the Act, 33 U.S.C. § 403, which provides in part:

 The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any * * * navigable river, or other water of the United States * * * except on plans recommended by the

 Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill [in a navigable waterway of the United States] * * * unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.

 Approval of the Secretary of Transportation is required where construction of a bridge or causeway is contemplated by virtue of the Department of Transportation Act, 49 U.S.C. § 1655(g) (1966), which transferred jurisdiction over bridges and causeways from the Secretary of the Army to the Secretary of Transportation. See Judge Murphy's discussion of the statutory interrelationships in the opinion below, 302 F.Supp. at 1087.

2. Highway Law § 340c, as amended (McKinney's Consol.Laws, c. 25, 1966), reads in pertinent part:

 Beginning at a point on interstate route 503 in the vicinity of Beacon or Wiccopee, to be determined by the superintendent of public works [now the Commissioner of Transportation], thence in a generally southerly direction to the

McMorran as Commissioner of Transportation to fix the exact route of the roadway and oversee its construction, and of section 30 of New York Highway Law, which prescribes the condemnation procedures in connection with highway construction. They also claimed that a lump sum appropriation by the New York legislature for general highway construction was an impermissible delegation of the spending authority. Their final claim was an equitable action against McMorran charging violation of the Rivers and Harbors Act in seeking to proceed with construction of the Hudson River landfill without congressional consent and approval of the Secretary of Transportation. The district court dismissed these claims, but granted injunctive relief against McMorran as intervenor-defendant in the actions against the federal defendants.

Important threshold questions on this appeal involve the jurisdiction of the district court over the subject matter of these actions, and the standing of these plaintiffs to seek review of agency action in federal court. We turn first to jurisdiction.

### I.

The district court rested its jurisdiction on the Administrative Procedure Act, 5 U.S.C. § 701 et seq. (Supp. IV). Section 702 provides as follows: "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." Section 704 states that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." Section 706(2) (C) permits the reviewing court to set aside agency action found to exceed the agency's statutory authority.

The statute pursuant to which the Army Chief of Engineers issued the disputed permit contains no provision for judicial review, nor does it include specific procedures for appeal of the Army's decision. Review of the action is therefore determined by the provisions of the Administrative Procedure Act, applicable to all administrative actions or proceedings "except to the extent that—(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701 (Supp. IV). Nothing in the Rivers and Harbors Act suggests that judicial review is precluded, and it is clear from a reading of § 401 that approval of projects involving the construction of "dikes" and "causeways," rather than being "committed to agency discretion by law," was, on the contrary, expressly reserved to Congress. The federal defendants contend that the landfill permit was governed by § 403, committing certain types of shoreline construction to the Army's discretion. But whether or not the Army could exercise its authority under § 403 without reference to § 401 was a matter of statutory construction obviously subjected to full review in the district court by the Administrative Procedure Act, 5 U.S.C. § 706. The district court properly relied on the presumption of reviewability embodied in the Administrative Procedure Act where there was no evidence of a congressional intent to prohibit review in the Rivers and Harbors Act. As the Supreme Court has twice held "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967); accord, Rusk v. Cort, 369 U.S. 367, 379–380, 82 S.Ct. 787, 7 L.Ed.2d 809 (1962); Kletscha v. Driver, 411 F.2d 436 (2d

---

vicinity of Ossining and thence continuing southerly, west of U. S. route nine, along or near the Hudson River to a connection or connections with existing highways, as determined by the

[Commissioner of Transportation] in the vicinity of the structure on the Governor Thomas E. Dewey Thruway known as "The Tappan Zee Bridge."

Cir. 1969); Cappadora v. Celebrezze, 356 F.2d 1 (2d Cir. 1966).

 There can be no question at this late date that Congress intended by the Administrative Procedure Act to assure comprehensive review of "a broad spectrum of administrative actions," including those made reviewable by specific statutes without adequate review provisions as well as those for which no review is available under any other statute. Abbott Laboratories v. Gardner, *supra*, 387 U.S. at 140, 87 S.Ct. 1507; *see* S.Rep.No. 752, 79th Cong. 1st Sess., 26 (1945); H.R.Rep. No. 1980, 79th Cong. 2d Sess., 41 (1946). Since the Army's issuance of this permit was final agency action for which there is no other adequate remedy in a court, and review is not clearly and convincingly precluded by the Rivers and Harbors Act, the Administrative Procedure Act must be read to confer equitable jurisdiction on the district court to protect by injunctive relief such rights as the plaintiff may have standing to assert. Kletscha v. Driver, 411 F.2d 436, 445 (2d Cir. 1969). In our discussion of standing, *infra*, we conclude that these plaintiffs are "aggrieved by agency action within the meaning of a relevant statute" and are therefore entitled to review. The district court has the power under § 706 to set aside agency action in excess of statutory authority, and we agree with the district court that issuance of the permit here exceeded the Army's authority. Under these circumstances, if the Administrative Procedure Act could not itself serve as a basis for jurisdiction, the important goal of subjecting final agency action to judicial scrutiny would be frustrated. We therefore conclude that the district court properly assumed jurisdiction.

## II.

Reference was likewise made to the Administrative Procedure Act to determine the plaintiffs' standing to obtain review. Their right to review was based on the Act's provision that "[a] person suffering legal wrong or * * * aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. Two of the plaintiffs (the Citizens Committee and the Sierra Club) made no claim that the proposed Expressway or the issuance of the dredge and fill permit threatened any direct personal or economic harm to them. Instead they asserted the interest of the public in the natural resources, scenic beauty and historical value of the area immediately threatened with drastic alteration, claiming that they were "aggrieved" when the Corps acted adversely to the public interest. They are, as the federal defendants observe, serving as "private Attorney Generals" to protect the public interest. See Associated Industries of State of New York v. Ickes, 134 F.2d 694, 704 (2d Cir. 1943).

Allowance of standing to private attorneys general in "public actions"[3] challenging administrative activity is by no means a new or unusual concept. See Associated Industries v. Ickes, supra; Office of Communication of United Church of Christ v. F. C. C., 123 U.S. App.D.C. 328, 359 F.2d 994 (1966); Reade v. Ewing, 205 F.2d 630 (2d Cir. 1953); cf. Scripps-Howard Radio, Inc. v. F. C. C., 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229 (1942); F.C.C. v. Sanders Brothers Radio Station, 309 U.S. 470, 60 S.Ct. 693, 84 L.Ed. 869, 1037 (1940). It is significant that standing in such cases has derived from judicial interpretation of the statutory term "aggrieved" as descriptive of persons entitled to review. Thus under the Federal Communications Act, where agency action assertedly contravened the public interest, private litigants were held to be "persons aggrieved" with standing "only as representatives of the public interest." Scripps-Howard Radio, Inc. v. F. C. C., *supra*, 316 U.S. at 14, 62 S.Ct. at 882;

3. See generally L. Jaffe, Judicial Control of Administrative Action 459–500 (1965); K. Davis, Administrative Law § 22.05 (1958).

L. Jaffe, Judicial Control of Administrative Action, 499 (1965).

The Supreme Court has observed that the law of standing is a "complicated specialty of federal jurisdiction, the solution of whose problems is in any event more or less determined by the specific circumstances of individual situations * * *." United States ex rel. Chapman v. F. P. C., 345 U.S. 153, 156, 73 S. Ct. 609, 612, 97 L.Ed. 918 (1953). Judge (now Chief Justice) Burger, in his Office of Communication of United Church of Christ v. F. C. C., *supra*, opinion characterized the concept of standing as "a practical and functional one designed to insure that only those with a genuine and legitimate interest can participate in a proceeding * * *." *Id.* 359 F.2d at 1002.[4] But the Supreme Court has recently cautioned that "[t]here must in addition [to adversary interest] be some connection between the official action challenged and some legally protected interest of the party challenging the action." Jenkins v. McKeithen, 395 U.S. 411, 423, 89 S.Ct. 1843, 1850, 23 L.Ed.2d 404 (1969). With these principles in mind, we must examine the nature of the interest these plaintiffs are seeking to protect, and the appropriateness of their claim to represent the public in demanding that protection.

We have already described the situation confronting the plaintiffs—the prospect of massive alteration of the Hudson River shoreline and of the physical environment for some ten miles along the river's bank. The Citizens Committee for the Hudson Valley (Citizens Committee) is an unincorporated association of citizens who reside near the proposed Expressway. The Sierra Club is a national conservation organization with substantial membership also in the area of the Expressway, and a history of involvement in the preservation of national scenic and recreational resources. Tarrytown is an incorporated village, and the planned Expressway would pass through its boundaries at the southern end of the roadway. All plaintiffs made a vigorous effort to present their views to the New York Department of Transportation and to the federal officials responsible for granting the disputed permit. They have evidenced the seriousness of their concern with local natural resources by organizing for the purpose of cogently expressing it, and the intensity of their concern is apparent from the considerable expense and effort they have undertaken in order to protect the public interest which they believe is threatened by official action of the federal and state governments. In short, they have proved the genuineness of their concern by demonstrating that they are "willing to shoulder the burdensome and costly processes of intervention" in an administrative proceeding. United Church of Christ, *supra*, 359 F.2d at 1005. They have "by their activities and conduct * * * exhibited a special interest in" the preservation of the natural resources of the Hudson Valley. Scenic Hudson Preservation Conf., 354 F.2d 608, 616 (2d Cir. 1965). It remains for us to examine whether there is legal justification for their intervention—whether there is a "legally protected interest" at stake which they can assert because of their special concern.

In *Scenic Hudson, supra,* we set aside an order of the Federal Power Commission granting a license to Consolidated Edison Company of New York to construct a hydroelectric project on the west side of the Hudson River at Storm

4. In *Church of Christ*, a citizens group pressing an organized protest against renewal by the FCC of a radio broadcasters license, alleging that the broadcaster had ignored the listening needs of nearly half the listening audience, was held to have standing before the Commission as a group representative of broadcast "consumers." Judge Burger treated the question of standing before the Commission as equivalent to standing for judicial review, 359 F.2d at 1000 n. 8, and cited as authority for his grant of standing to members of the general public, *inter alia*, Scenic Hudson Preservation Conf. v. F. P. C., 354 F.2d 608 (2d Cir. 1965).

King Mountain. Finding that the Federal Power Act required the Commission to consider as a factor in granting such a license "recreational purposes" of waterway development,[5] we held that persons asserting an interest in that factor were "aggrieved" within the meaning of that statute's review provisions when the Commission decided adversely with respect to their claims.[6] The expression by Congress in the Federal Power Act of a concern for the environmental effect which the agency's action could be expected to exert was interpreted to create express statutory protection for the public's interest in conservation of environmental resources, and organizations with a demonstrated concern for those resources could claim that statutory protection for the public.

The Rivers and Harbors Act has no review provisions corresponding to those in the Federal Power Act. Nevertheless, persons "aggrieved" by agency action pursuant to that statute are entitled to review on similar terms by the Administrative Procedure Act. We agree with the conclusion of Judge McLean in Road Review League v. Boyd, 270 F.Supp. 650, 661 (S.D.N.Y.1967) that the meaning of "aggrieved" in one act is not different from its meaning in the other.[7] Section 702 of the Administrative Procedure Act provides that a person "aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." These plaintiffs, alleging that the Corps and the Secretary of the Army ignored their environmental concerns, are "aggrieved" within the meaning of at least three "relevant statute[s]." The Department of Transportation Act[8] declares "the national policy that special effort should be made to preserve the natural beauty of the countryside * * *," and requires consideration of recreational resources and historical values before the Secretary can approve projects under its jurisdiction. The

5. Federal Power Act § 10(a), 16 U.S.C. § 803(a) reads in part:
 All licenses issued * * * shall be on the following conditions: (a) That the project adopted * * * shall be such as in the judgment of the Commissioner will be best adapted to a comprehensive plan for improving or developing a waterway or waterways for the use or benefit of interstate or foreign commerce, for the improvement and utilization of water-power development, and for other beneficial public uses, including recreational purposes; * * *

6. The pertinent review provisions are contained in section 313(b) of the Federal Power Act, 16 U.S.C. § 825l(b):
 (b) Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the United States Court of Appeals for any circuit wherein the licensee or public utility to which the order relates is located * * *.

7. The defendants concede that the *Road Review* decision, if correct, is controlling here. *Road Review* was decided under the Federal Highways Act, 23 U.S.C. § 101 *et seq.* which, like the Rivers and Harbors Act, contained no review provisions.

Judge McLean relied on the Administrative Procedure Act to find both jurisdiction over the subject matter and standing for the plaintiffs, among whom were non-profit civic organizations and a town, for practical purposes identical to the plaintiffs in the present case. As our present decision makes clear, we believe Judge McLean's decision in *Road Review* was correct.

8. Department of Transportation Act of 1966, as amended by § 18(b) of the Act of August 23, 1968, 82 Stat. 824, 49 U.S.C. § 1653(f) (Supp. IV). The merits of the plaintiffs' claims are entwined with their standing to maintain them. One of their contentions was that a portion of the proposed expressway constituted a causeway and, therefore, that the Corps erred in failing to secure the consent of the Secretary of Transportation pursuant to the Department of Transportation Act. Since we are in agreement with the district court that the plans for the expressway did envision the construction of a causeway, see *infra*, the Department of Transportation Act is a "relevant" statute, and the concern it evidences for preservation of the environment serves to reinforce our decision that the plaintiffs have standing to maintain this action.

Hudson River Basin Compact Act, P.L. 89–605, 89 Stat. 847 (1966) embodies the conclusion of Congress that the Hudson River basin contains resources of "immense economic, natural, scenic, historic and recreational value to all the citizens of the United States," and instructs all agencies to consider those resources in planning or approving activities affecting the area. One of the regulations under which the Corps of Engineers issued the present permit provides the following:

> \* \* \* the decision as to whether a permit will be issued must rest on an evaluation of all relevant factors, including the effect of the proposed work on navigation, fish, and wildlife, conservation, pollution, aesthetics, ecology, and the general public interest. 33 CFR 209.120(d).[9]

█ Thus administrative as well as congressional concern for natural resources in the present exercise of federal authority is evident. We hold, therefore, that the public interest in environmental resources—an interest created by statutes affecting the issuance of this permit—is a legally protected interest affording these plaintiffs, as responsible representatives of the public, standing to obtain judicial review of agency action alleged to be in contravention of that public interest. Scenic Hudson Preservation Conf. v. F. P. C., *supra*; State of Washington Dept. of Game v. F. P. C., 207 F.2d 391 (9th Cir. 1953); Road Review League v. Boyd, *supra*.

### III.

█ The federal defendants challenge the standing of the Village of Tarry-town on a somewhat different ground. Conceding that the Village may have standing to challenge construction of the Expressway itself,[10] they contend that issuance of the fill permit could not have a direct effect on the Village and therefore no standing exists to challenge the permit. This argument ignores the realities confronting the Village of Tarrytown. It is true that the Corps of Engineers cannot affirmatively control the entire Expressway project, as the Federal Power Commission controlled the project at issue in *Scenic Hudson,* and that all that is required of the Corps is "acquiescence" in parts of the State's proposed construction. Nevertheless, federal acquiescence in the project would spell immediate jeopardy to substantial interests of the Village, because once the permit issues, the State of New York can commence the costly dredging and filling operation and proceed inexorably on the course of highway construction to which the Village objects. The Village would be hard put at some later date to overbalance the equities in favor of the State such a large commitment of public funds would engender and its legitimate concern could be irretrievably subverted even though the permit was issued unlawfully. Although the fill itself will not have a significant direct effect on the special interests demonstrated by Tarrytown, the effect of the permit will have a substantial impact. Without the permit, New York cannot begin construction of the Expressway along the presently planned route. With it, condemnation proceedings and construction can commence all along that route. We think the concept of standing is sufficiently "practical and functional" to permit Tarry-

---

9. See also Fish and Wildlife Coordination Act of 1934, as amended, 16 U.S.C. § 662(a) ; Fish and Wildlife Act of 1956, as amended, 16 U.S.C. § 742a *et seq.;* Memorandum of Understanding between the Secretary of the Interior and the Secretary of the Army, 33 CFR 209.120(d) (11). Claims relevant to most of these factors were advanced by the plaintiffs throughout the proceedings in connection with their contention that issuance of the permit was "arbitrary and capricious."

The district court did not reach the "arbitrary and capricious" claim in deciding for the plaintiffs, and we need not consider it here.

10. The district court found that the Village of Tarrytown would suffer "loss of tax revenues and interference with the Urban Renewal project already in progress in the Village." 302 F.Supp. at 1092. See Scenic Hudson Preservation Conf. v. F. P. C., 354 F.2d at 616.

town to take advantage of federal remedies to avoid the substantial impact of the consequences flowing from issuance by federal agencies of the disputed permit.

## IV.

■ We turn now briefly to the merits of the controversy. After 29 days of trial, during which numerous exhibits were offered (including a model of the proposed Expressway), experts were examined, maps, charts and technical dictionaries were consulted and the facts were exhaustively presented, the district court concluded that construction of both a "dike" and a "causeway" were contemplated by the State. The court was called upon to construe the meaning of those terms as they were used in § 401 of the Rivers and Harbors Act of 1899, and as they applied in fact to the Expressway plans before it. Having carefully reviewed the pertinent evidence and considered the governing rules of statutory construction, we adopt the conclusion of the district court that the word "dike" used by the defendants in their permit has the same meaning there as in § 401 of the Act, and that construction of a dike is forbidden by that Section without the consent of Congress.

We likewise agreed that the Corps of Engineers should not have ignored the prospect that a "causeway" within the meaning of § 401 was to be a part of the project it was approving, and that approval of the Secretary of Transportation would later be required. Any further federal role in consideration of this massive project would be effectively foreclosed by the Army's acquiescence in a 9.5 million cubic-yard landfill, to be undertaken at great expense to the New York taxpayers. Indeed Congress, which also must approve construction of a causeway over navigable waters, would, in practical effect, be precluded from reversing such a course of action already begun pursuant to the present permit issued by the Army.

## V.

■ The district court held that the plaintiffs' constitutional claims were without merit, and we agree. As we understand their argument, three separate delegations of power to McMorran combine to constitute, in their view, an abdication of legislative responsibility in construction of this Expressway. The Expressway law itself is an eight-line statute[11] describing generally the terminal points and route of the highway and prescribing that, between Ossining and the Tappan Zee Bridge, the roadbed is to proceed west of Highway 9 and "along or near" the Hudson River. Second, section 30 of New York's Highway Law allows McMorran to condemn property needed for highway construction, and sets forth the procedures to be followed in condemnation. These procedures are themselves challenged as violative of due process. Third, the legislature's lump sum appropriation for highway construction to the Department of Transportation permits McMorran considerable latitude in deciding how the highway money is to be spent. The plaintiffs argue that, with all the discretion over condemnation of property, expenditure of funds and fixing of routes afforded to McMorran by this combination of legislation, the "aggregation of power" vested in him violates the citizens' right to due process.

On this appeal, the plaintiffs have not developed the facts or the law sufficiently to be persuasive. The Expressway statute certainly offers very little guidance for major decision which the Department of Transportation is authorized to make. McMorran cites a bevy of regulations, as does the district court, as restrictions on this power, but few of them appear to be relevant to these major decisions. Thus the statute itself sets the bounds of McMorran's discretion, which is very broad. However, nullification of statutory delegations of discretionary authority in major public works projects on grounds of due proc-

---

11. Note 2, *supra*.

ess is quite rare, and the plaintiffs offer virtually no authority for judicial intervention along the lines they propose. Indeed authorities closest in point are to the contrary. See Ahoyian v. Massachusetts Turnpike Authority, 211 F.Supp. 668, 669 (D.Mass.), aff'd, 371 U.S. 186, 83 S.Ct. 265, 9 L.Ed.2d 228 (1962); Sleepy Hollow Valley Commission v. McMorran, 20 N.Y.2d 190, 195–197, 282 N.Y.S.2d 242, 229 N.E.2d 32 (1967); cf. Seneca Nation of Indians v. United States, 338 F.2d 55 (2d Cir. 1964). We agree with the district court that these claims must be rejected.

Affirmed.