464 F.2d 995
 Luella H. MILLS, on behalf of herself and all other persons
similarly situated, Plaintiff-Appellant,
v.
Elliot L. RICHARDSON, individually and in his capacity as
Secretary of Health, Education and Welfare,
Defendant-Appellee.
 No. 768, Docket 71-2172.
 United States Court of Appeals,
 Second Circuit.
 Argued June 7, 1972.
Decided July 14, 1972.
 
 Herbert L. Warren, Ithaca, N. Y. (Cornell Legal Aid, Ithaca, N. Y., of counsel), for plaintiff-appellant.
 Michael Kimmel, Dept. of Justice, Washington, D. C. (Harlington Wood, Jr., Acting Asst. Atty. Gen., James M. Sullivan, Jr., U. S. Atty., and Kathryn H. Baldwin, of counsel), for defendant-appellee.
 Before FRIENDLY, Chief Judge, and LUMBARD and MULLIGAN, Circuit Judges.
 FRIENDLY, Chief Judge:
 
 
 1
 The circumstances of this case, alleged in the complaint in this action in the District Court for the Northern District of New York and in an affidavit of an officer of the Social Security Administration submitted to the district court[1] are as follows:
 
 
 2
 In 1959, as a result of the death of her husband and her custody of their three minor children, Merry Lou, Arlee, and Gloria, plaintiff Louella Mills became entitled to mother's insurance benefits under 42 U.S.C. Sec. 402(g)(1), and the children became entitled to child's insurance benefits under 42 U.S.C. Sec. 402(d), which were paid to the mother for their use, 42 U.S.C. Sec. 405(j). Benefit payments for Merry Lou were terminated as a consequence of her marriage on June 11, 1960, 42 U.S.C. Sec. 402(d)(1)(D), and for Arlee on her becoming eighteen in December, 1963. In consequence of an automobile accident in 1964, Mrs. Mills, who had theretofore been gainfully employed, suffered a nearly total loss of vision and a crippling leg injury which rendered her unemployable and entitled her to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. Sec. 423. Eligibility for these benefits has never been at issue. The payments for Gloria were technically terminated in April 1968 on her becoming 18, 42 U.S.C. Sec. 402(d)(1)(E) and (g)(1). However, when the Administration determined that Gloria was a full-time student, 42 U.S.C. Sec. 402(d)(1)(E), benefits were immediately reinstituted without any period of non-receipt. Later Mrs. Mills sought reconsideration of Gloria's entitlement to survivor's benefits, without regard to age or student status, on the basis of disability due to mental retardation. She was notified on August 6, 1969 of favorable reconsideration of Gloria's claim, and on September 19 that this entitled her to mother's payments for having a disabled adult child in her care. She was sent a check covering the latter item for the 16 months beginning April 1968, see 42 U.S.C. Sec. 402(s) (1).
 
 
 3
 On July 11, 1969, Gloria married a man who also was mentally retarded and was consequently unemployable. Mrs. Mills' complaint alleged that she then contacted the Ithaca, N. Y., branch of the Social Security Administration to inquire whether Gloria's marriage would affect the payments being received and was informed that it would not so long as Gloria's husband was not also receiving Social Security Benefits. Allegedly also Mrs. Mills continued to apply the payments in respect of Gloria for the latter's use and benefit.
 
 
 4
 On February 15, 1971, Mrs. Mills received a letter from the Social Security Administration that she would receive no further disability payments until April 1973, since a large overpayment of other benefits had to be recouped. Although the complaint reads as if this notice were a bolt from the blue and appellant's brief on appeal maintains that it was the "first indication to Mrs. Mills that her benefits were to be suspended," the affidavit submitted on behalf of the defendant indicates that it was the end result of fruitless correspondence stretching over 18 months. Having learned of Gloria's marriage, the Ithaca District Office wrote Mrs. Mills on August 26, 1969, that this would terminate both the child's survivors benefits and mother's insurance benefits unless Gloria had married someone who was receiving Social Security benefits, 42 U.S.C. Sec. 402(d)(5), (g)(1); it asked that, if Gloria had not married someone entitled to such benefits, the August 3, 1969 check be returned and said that if it was not, the office might have to suspend Mrs. Mills' benefits. Mrs. Mills answered that she had not received a check since June 3, and had been told that Gloria's benefits were terminated. In fact, due partially to a lack of coordination with the New York payment center, the payments continued (save for Gloria's July, 1969 payment) for a considerable time. In August, 1970, Mrs. Mills was notified that she had thus received an overpayment of $2,053.20, which she was required to refund unless she could bring herself within 42 U.S.C. Sec. 404(b), which provides there shall be no adjustment of payments in the case of "any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience" (emphasis supplied), and the regulations, 20 C.F.R. Secs. 404.506-.515, which the Secretary had issued to implement this. Although Mrs. Mills did not respond, the Ithaca District Office sought to elicit facts that might support her retention of the payments; the County Welfare Department informed it that Mrs. Mills had not turned over any social security benefit checks to Gloria (who apparently was receiving welfare payments) and that Mrs. Mills had told the Welfare Department she was receiving only $118.80 per month from the Social Security Administration, this being her own disability payment. In the absence of any communication from Mrs. Mills showing entitlement to the relief provision of Sec. 404(b), the Social Security Administration finally wrote the letter of February 11, 1971, availing itself of the rights to recover overpayment provided in Sec. 404(a)(1).
 
 
 5
 The Administration's letter precipitated this action. The complaint, filed on April 29, 1971, began by announcing that it was a class action for declaratory and injunctive relief with respect to the Social Security Administration's procedures for recouping alleged prior overpayments of Title II benefits "to plaintiff and all other persons similarly situated without giving notice of the grounds upon which said adjustments or suspensions are proposed or the opportunity for plaintiffs to be heard prior to the time a decision is made to make such adjustments or suspensions." The complaint went on to allege many of the facts recited above. It also claimed that "At no time was plaintiff given an opportunity to be heard prior to defendant's ex parte decisions that overpayments had been made to her and her daughter and that said overpayments should be recouped by suspending her disability benefits for two years" and that "At no time did defendant inform plaintiff of the manner in which she might seek review" of that decision or the grounds thereof. After reciting that Mrs. Mills' only income (apart from the then suspended disability payments) was $129 per month under the federal category of Aid to the Disabled from the New York Department of Social Services, the complaint elaborated its class action theory. The class was now stated to be "all those persons who receive Old Age Survivors and Disability Payments under Title II of the Social Security Act, 42 U.S.C. Sec. 401 et seq., and who are subject to a summary suspension, modification or adjustment in said payments without notice or an opportunity for a due process hearing prior to such determination affecting such payments."[2] There followed a statement of the constitutional claims and requests for a three-judge court under 28 U.S.C. Sec. 2282 and injunctive and declaratory relief.
 
 
 6
 Prior to January 14, 1971, the Social Security Administration's procedures did not require that an overpaid beneficiary be notified of the waiver provisions of the statute, 42 U.S.C. Sec. 404(b), if the files conclusively established that the beneficiary was with fault in receiving the overpayments. On that date the Commissioner of the Social Security Administration approved procedures with respect to notices of termination and reduction or suspension of benefits which removed the above qualification from the recoupment process and made other substantive modifications.[3] These new procedures, reflected in the current Social Security Administration Claims Manual, provide that when it is determined that an incorrect payment has been made, the person liable should be given a written notice stating:[4]
 
 
 7
 (1) The incorrect payment made, how, and when it occurred. (If the overpayment resulted from the entitlement of another beneficiary, the adversely affected individual(s) must be informed of the name, relationship to the WE, and basis for entitlement of the new beneficiary.)
 
 
 8
 (2) The right to request reconsideration of the overpayment determination.
 
 
 9
 (3) The required recovery.
 
 
 10
 (4) The proposed adjustment or the demand for repayment where adjustment is not possible.
 
 
 11
 (5) The waiver provisions of the law (Social Security Act, secs. 204(b) or 1870(c)).
 
 
 12
 (6) The availability of partial adjustment or partial refund.
 
 
 13
 (7) The need to notify the DO promptly if he feels that the circumstances in his case would justify waiver, partial adjustment, or partial refund.
 
 
 14
 The revised Manual also provides, with certain exceptions not here material, that:[5]
 
 
 15
 Before we start to adjust the overpayment against the benefits due a beneficiary, he or his payee will normally be given reasonable opportunity to contest the correctness of the determination or to establish that a basis exists for waiver or partial adjustment. The notice to the beneficiary will advise him that adjustment will be deferred 30 days. However, actual adjustment may at the discretion of the reviewing office be extended to a longer period when the facts in a given case, including but not limited to time case is being worked, cutoff dates, mailing time, etc., indicate that a 30-day period would be inadequate for consideration of the matter and reply by the beneficiary and reviewing office processing time.
 
 Beyond this, the Manual states:[6]
 
 16
 If the person responds raising some question about the correctness of the determination of overpayment, or raises a question about recovery, waiver or partial adjustment, the DO will obtain the necessary evidence and prepare a recommendation to the reviewing office for disposing of the case. Thus, if the person liable requests reconsideration of the substantive determination and it appears that the determination will be affirmed, the DO will develop the possibility of waiver of adjustment or recovery of the overpayment at the same time it receives evidence to resolve the request for reconsideration. This is necessary since, if the substantive determination is affirmed the Reconsideration Determination will cover both issues (Sec. 8737).
 
 
 17
 Where reconsideration of the overpayment determination, waiver, or partial adjustment development is initiated, withholding to recoup the overpayment will be further deferred and payment will be continued until development has been completed, if the beneficiary is otherwise entitled to benefits. If development will not be completed before the expiration of the 30-day period, the DO will utilize teletype to advise the reviewing office.
 
 
 18
 [W]here the beneficiary did not respond until after the deferral period, if the beneficiary requests either waiver, partial adjustment, or reconsideration of the overpayment determination and benefits are otherwise payable, the DO will immediately notify the reviewing office to initiate payment of benefits effective with the current operating month until such time as the issue has been resolved.
 
 
 19
 The Manual contains various other compassionate provisions too numerous to mention here.
 
 
 20
 The Government also advises us that a determination of overpayment and inapplicability of the waiver provision is considered to be an initial determination, 20 C.F.R. Sec. 404.905(b) (4) (1971). This is reviewable initially by reconsideration, Secs. 404.909 and 404.910. If that should be adverse, a claimant may request an evidentiary hearing before an examiner, 20 C.F.R. Secs. 404.915, 404.917, with review by the Appeals Council, 20 C.F.R. Sec. 404.945, and ultimate review in a district court, 42 U.S.C. Sec. 405(g). Procedures subsequent to adverse determination on reconsideration, including any requested oral hearing, will normally be after effectuation of the recoupment begins.
 
 
 21
 In light of the new procedures and the fact that, in violation of them, Mrs. Mills was improperly denied notice of her right to request reconsideration, the Administration informed her on June 10, 1971 that her disability benefits were being restored; that a check for $363.70, representing benefits through May, would be sent shortly and checks would be sent monthly thereafter; that an investigation in regard to the overpayment would be undertaken; and that she should cooperate with a representative of the Social Security Administration when contacted. She also was encouraged to telephone or visit the district office of the Administration if she had any questions. The $363.70 check was received and disability payments were resumed.
 
 
 22
 Upon this record Judge Port dismissed the complaint on the ground that the case was moot. We have no reason to doubt that on the facts then before him, he was correct in not proceeding with the case. Not only had the plaintiff been promised the return of the withheld payments, but the issue of waiver of recoupment was to be re-examined under the new procedures. Cf. Richardson v. Wright, 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972). However, a development which was brought to our attention after the appeal was argued in this court has materially changed the situation in that regard. On June 5, 1972, the Social Security Administration wrote Mrs. Mills of the result of its reconsideration. After recomputing the overpayment as $1,950.60 rather than $2,053.20, the Administration found that it could not determine that Mrs. Mills was not at fault since the August 26, 1969, letter placed her on clear notice that Gloria's marriage to someone not receiving social security benefits terminated both Gloria's entitlement to survivor's benefits and Mrs. Mills' own entitlement as mother of a disabled child in her care; despite this, Mrs. Mills had refused to comply with the request for return of the August 3 check and had continued to receive checks to which she should have known she was not entitled.[7]
 
 
 23
 Our request for a response from the Government produced a rather unenlightening letter stating that whereas "recoupments would ordinarily be initiated immediately following such an adverse reconsideration," nevertheless "because of the pendency of plaintiff's appeal in this Court and in deference to the Court's current consideration of the appeal," the Department of Justice had "advised the Social Security Administration against placing the recoupments in effect pending disposition of the present appeal." If we read this aright, it means that should we affirm the district court's dismissal, recoupment, in some form, would commence prior to any evidentiary hearing which Mrs. Mills might request. That being so, the case is no longer moot, see United States v. W. T. Grant Co., 345 U.S. 629, 632, 73 S.Ct. 894, 97 L.Ed. 1303 (1953). Accordingly, we vacate the order of dismissal and remand for further proceedings. In doing this, we think it not amiss to make some observations, arising from our study of the case, which may be of assistance to the district court.
 
 
 24
 The first is that, under William Jameson & Co. v. Morgenthau, 307 U.S. 171, 173-174, 59 S.Ct. 804, 83 L.Ed. 1189 (1939) and Sardino v. Federal Reserve Bank of New York, 361 F.2d 106, 114116 (2 Cir.), cert. denied, 385 U.S. 898, 87 S.Ct. 203, 17 L.Ed.2d 130 (1966), we do not believe this to be a case requiring the convocation of a three-judge court pursuant to 28 U.S.C. Sec. 2282. Although plaintiff does challenge the constitutionality of 42 U.S.C. Sec. 404 with respect to recovery or adjustment of overpayments, the statute itself is silent on how the Secretary shall proceed to make the finding of overpayment, and the only theory of constitutional invalidity is that it fails to provide specifically for an evidentiary hearing prior to the initiation of recoupment. Plaintiff's complaint is directed essentially at the failure of the regulations issued under the authority of 42 U.S.C. Sec. 405(a) to provide for an evidentiary hearing in advance of recoupment, as Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), allegedly requires.[8]
 
 
 25
 A second observation is that the Goldberg doctrine applies only "where important decisions turn on questions of fact." 397 U.S. at 269, 90 S.Ct. at 1021. So far as now appears, there is here no question of fact with respect to the overpayments; the only issue concerning which there may be such a question is whether Mrs. Mills was disqualified by "fault" from the benefits of the waiver provision of Sec. 404(b). Even as to that, we doubt that the principle of Goldberg would require the Social Security Administration to hold an evidentiary hearing under circumstances where summary judgment would be appropriate in a civil action because of failure to "set forth specific facts showing that there is a genuine issue for trial," F.R.Civ.P. 56(e). Even accepting the allegation of the complaint as to what Mrs. Mills was told when she contacted the Ithaca office in July, 1969, this may well be such a case in light of the subsequent notifications. Indeed, we might be disposed so to decide except for our doubt, see fn. 1, supra, whether plaintiff was sufficiently apprised that defendant was seeking dismissal on the merits. Finally, we must add with regret, the plaintiff may be facing an insuperable obstacle in the requirement of a $10,000 jurisdictional amount, 28 U.S.C. Sec. 1331, unless the action were held to fall under 28 U.S.C. Sec. 1361.[9] Clearly Mrs. Mills' own claim does not meet the jurisdictional amount, and it seems doubtful that, even if the district court were to deem class action designation appropriate under F.R.Civ.P. 23(b) (2), aggregation of the claims of those members of the class against whom recoupment had been initiated for "fault" in the receipt of overpayments would be permissible under Snyder v. Harris, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969). Of course, Mrs. Mills would face none of these obstacles if she should choose to follow the administrative and judicial review procedures described above; the Administration might well consider a method of recoupment less Draconian than total suspension.
 
 
 26
 The order is vacated and the cause remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 The hearing was on plaintiff's motion for the convening of a three-judge court under 28 U.S.C. Sec. 2282 and designation as a class action. The affidavit can be read either as going to the merits, or as a suggestion of mootness, or as both. Plaintiff suggests the latter issue was not raised by the defendant-appellee by motion until the hearing, and there is nothing in the record on appeal which indicates that the plaintiff had notice, other than defendant's answer filed on the same day as the hearing, that she faced a possible dismissal on the merits at that time
 
 
 [2]
 So far as we can see, this would include all of the approximately 25 million Social Security recipients. Defendant's Answer to Plaintiff's interrogatories at 6, 8
 
 
 [3]
 Affidavit of Bernard Popick, Director, Bureau of Disability Insurance, Social Security Administration, June 25, 1971 at 7, p 20. While most of the modifications apparently affect only the Administration's Internal Claims Manual, others affect the published regulations, see e. g., 37 F.R. 10553-54 (1972), effecting a change in 20 C.F.R. Sec. 404.907 to require notice of right to reconsideration, and adding 20 C.F.R. Sec. 404.502a, which requires notice of the waiver provisions of the Act, 42 U.S.C. Sec. 404(b)
 
 
 [4]
 Social Security Administration Claims Manual Sec. 5503(a) (March, 1972)
 
 
 [5]
 Id. Sec. 5503(b)
 
 
 [6]
 Id. Sec. 5503(c) (emphasis in original)
 
 
 [7]
 Apparently dealing with an argument based on a letter of September 19, 1969, the Administration noted that this stated that Mrs. Mills was entitled to mother's benefits for a disabled adult child in her care and that Gloria had left her care upon marriage in July, 1969
 
 
 [8]
 Although a three-judge court was convoked in Wright v. Finch, 321 F.Supp. 383 (D.D.C.1971), and a direct appeal to the Supreme Court was entertained, Richardson v. Wright, 405 U.S. 208, 92 S.Ct. 788, 31 L.Ed.2d 151 (1972), neither court discussed the jurisdictional problem. Also there was more basis in that case for viewing the constitutional attack as aimed at the statute, 42 U.S.C. Sec. 425, which specified that the Secretary might suspend disability benefits solely "on the basis of information obtained by or submitted to him."
 
 
 [9]
 We note that plaintiff has also asserted that the district court has jurisdiction under the judicial review provisions of the Administrative Procedure Act, now 5 U.S.C. Sec. 701 et seq. While some courts have taken jurisdiction under these provisions without expressly considering whether they constitute jurisdictional grants independent of the jurisdictional amount requirement of 28 U.S.C. Sec. 1331, see Davis, Administrative Law Sec. 23.02 (Supp.1970), neither the Supreme Court nor this court has so decided expressly